CALDWELL *vs.* WALLACE.

1. In a declaration upon the false warranty of a slave, counts in case on the warranty, and in trover may be well joined.
2. A warranty of the soundness of the " person" of a slave, includes a warranty of the soundness of mind.

This was an action of trespass on the case, prosecuted in Butler Circuit Court, against Caldwell, for the recovery of damages for the false warranty of a slave, sold by him, to the defendant in error.

The plaintiff below, declared in three counts—

First—For that, whereas the said plaintiff, theretofore, &c. at the special instance and request of the defendant, bargained with him for the sale of a certain negro woman slave, named Letty, at and for a certain price or sum of money, to-wit, the sum of four hundred dollars: and the said defendant then and there by falsely and fraudulently warranting the said negro woman to be well and sound in person; sold the said slave to the said plaintiff for the sum of four hundred dollars, then and there paid to the defendant: whereas, in truth and in fact, the said negro woman slave, was, at the time of the said sale and warranty, of unsound mind, and of weak and unsound eyes and sight; and had from thence so continued, &c.

Secondly—A count upon an exchange of slaves, setting out, that in consideration of the aforesaid warranty, the plaintiff had exchanged a boy slave named Dave, for the said slave Letty, &c.

Thirdly.—A count in trover for the boy slave, Dave.

The record did not disclose the particular plea relied on, but at September term, 1831, a verdict and judgment were rendered in favor of the plaintiff; from which the defendant prosecuted a writ of error.

From the bill of exceptions, taken in the cause, it appeared, that on the trial, the plaintiff produced, and having proved, read to the jury a bill of sale for the slave in question, of the following tenor, to-wit: " The State of Alabama, Butler county—Received of James Wallace, four hundred dollars, in full payment, for a negro woman named Letty, supposed to be about twenty-four of age, which I warrant to be well and sound in person, and which title I warrant forever to the said James Wallace and heirs, against me and my heirs, or any other person or persons claiming the same. Given under my hand and seal, this tenth day of July, 1830.—SAMUEL L. CALDWELL, Seal."

The plaintiff then proved that the negro named in the above bill of sale, was of weak and unsound mind, being deficient in understanding. This proof being objected to, and admitted, the Court was asked to instruct the jury, that the warranty in the bill of sale, did not extend to defects of mind: that if the word " person" in common parlance, was contradistinguished from " mind," then the jury should so consider it in making up their verdict—*sed per Curiam*—it was held, that the warranty extended as well to defects of mind, as of body; and that if the value of the slave was impaired by unsoundness of intellect, such unsoundness should be considered: to all which, the defendant excepted, &c.

*Gordon*, for the plaintiff in error.—The question is, does a warranty, as to defects of *person*, extend to defects of *mind?* As there is no direct authority in point; and as the word person has no technical meaning, we must resort to its common acceptation. It is here employed in relation to a being, of mind and body—distinguished from the brute. The term, person, is as applicable to the most gifted, as to an idiot.— When speaking of the person of an absent individual, we allude alone to his body; which is the sense in which it is used in the warranty: it is used in reference to the body. When we see a stranger, we ask what person is that—we have no relation here to his mind. This was evidently the meaning of the parties—they used the word, as used in common parlance. They meant the body of a human being, as distinguished from that of a brute. The negro might have been not of fine sense, but still free from constitutional disease.

*Ellis*, contra.—In the construction of this word, person, the rule as to the construction of deeds, must apply, to-wit, strongly against the grantor.—8 Johns. R. 495—16 ib. 182. This was the sale of a being, constituted of body and mind; and evidently, the qualities of that person, which are the result of both body and mind, were the object of the sale—and the reference of the warranty. The word person, has always been held, to apply to the mind as well as the body.—1 Black. Com. 123, 124.

TAYLOR, J.—Two questions are raised by the assignments of error.

CALDWELL *vs*. WALLACE.

1st. Is there a misjoinder of actions?

2d. Does the contract include a warranty of mind, as well as body?

The first objection has not been insisted on; and, indeed, it could not have been. There are two counts in the declaration—one in case, on the warranty, the other in trover. They are both in *tort*, and therefore, may legally be joined. On the other question, we feel as little difficulty. The bill of sale warranted the negro to be sound in person: the proof was, that she was of unsound mind. The counsel for the plaintiff in error insists, that this warranty only extends to diseases or defects of the body: we do not think so. The best lexicographers give the word "person," as meaning the whole man. It is true, that in common parlance, it is frequently applied to the outward or visible man: yet, its correct meaning conveys the idea of the mind, as well as the body; and it is a term used to contradistinguish rational from irrational creatures, and thus applied, seems to refer peculiarly to the mind.

But in this case, the breach laid in the declaration is, that the negro was of unsound mind: and upon this declaration an issue is formed. It is true, that if this issue is immaterial, we should be bound to reverse the judgment: but we cannot consider it so.

The usual warranty, when a negro is the subject of it, is, that he is sound in body and mind: here one word is used, calculated, and, we think, intended to include the meaning of both. If it were doubtful, the construction should be most strongly against the warrantor; else he would, in all probability, be ena-

bled to effect a fraud, by the insertion of this term, so novel in contracts and legal proceedings.

We are all of opinion, that the judgment should be affirmed.